UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
                              )
In re NICHOLAS J. FIORILLO,    )    CIVIL ACTION NO.
          Debtor.             )    4:10-cv-40238
                              )    Bankruptcy No. 10-44179
                              )
```

MEMORANDUM AND ORDER

June 24, 2011

Facing imminent foreclosure, Appellant-Debtor Nicholas
Fiorillo filed for Chapter 11 bankruptcy in the United States
Bankruptcy Court for the District of Massachusetts.  He sought to
forestall the foreclosure through the automatic stay provisions
of the Bankruptcy Code.  After the Bankruptcy Court converted his
case to a Chapter 7 liquidation proceeding, Fiorillo moved the
Bankruptcy Court to dismiss the case.  He based that motion upon
his noncompliance with 11 U.S.C. § 109(h), the Bankruptcy Code's
credit-counseling requirement.  Because he had not complied with
§ 109(h), he argued, he was ineligible to be a "Debtor" under the
statute and, consequently, the Bankruptcy Court lacked
jurisdiction over his bankruptcy proceeding.  The Trustee
objected, and the Bankruptcy Court denied the motion.  Finding
Fiorillo estopped from belatedly arguing that he had not complied
with the credit-counseling requirement, I affirm.

.

## I. BACKGROUND

A. Factual and Procedural Background

Nicholas Fiorillo filed his *pro se* petition for Chapter 11 bankruptcy as an individual on August 23, 2010. As part of his bankruptcy petition, Fiorillo included an "Exhibit D" — signed under penalty of perjury — certifying compliance with the Bankruptcy Code's credit counseling requirement, 11 U.S.C. § 109(h). The form includes four numbered options with accompanying check boxes: (1) certifying that the debtor has taken such a course within 180 days and attaching a certificate of completion; (2) certifying that the debtor has taken such a course within 180 days but has yet to obtain certification; (3) certifying that the debtor requested counseling but could not receive said counseling due to exigent circumstances and requesting a temporary waiver; or (4) certifying that the debtor is exempt from the credit counseling requirement.

Fiorillo checked the second box, indicating that he had received approved credit counseling but had yet to obtain certification. However, he also stated, under the third (unchecked) option, that he "had an agreed upon arrangement with [his] main creditor to except [*sic*] good funds to pay off existing obligation. At the last minute Creditor did not accept agreed upon payment and now is trying to auction of [*sic*] an asset today." He did not then submit any certification within

fifteen days, as required by 11 U.S.C. § 521(b)(1), and did not file the necessary certification and motion required by 11 U.S.C. § 109(h)(3) to obtain the temporary waiver.  He did, however, take advantage of the Bankruptcy Code's automatic-stay provision, 11 U.S.C. § 362(a), to stay the foreclosure sale referred to in his petition.

On September 15, 2010, Fiorillo filed a motion to dismiss his petition, and a hearing on the motion was scheduled for October 21, 2010.  And, on October 5, 2010, Fiorillo moved the Bankruptcy Court for leave to amend his Exhibit D filing, stating that "[t]he debtor erred in checking the correct explanation of his credit counseling status."  The motion represented that Fiorillo had mistakenly checked the box for the second option, but that "[t]he debtor had not taken the course before his filing and as stated below in box 3 of his initial filing, an explanation of his exigent circumstance was provided."  On October 25, 2010, the Bankruptcy Court granted the motion to amend Fiorillo's Exhibit D to reflect that he had not taken the course but was requesting a temporary waiver due to the stated exigent circumstances.

Meanwhile, Fiorillo's bankruptcy action proceeded.  On September 7 and 21, 2010, Fiorillo moved for additional time to file his schedules; the first motion was granted and the second denied.  Fiorillo failed to file the required documents by the

3

date ordered by the court and did not attend the scheduled Section 341 meeting on September 28, 2010. Consequently, the Bankruptcy Trustee moved on October 4, 2010, to convert the petition to a Chapter 7 liquidation action due to Fiorillo's non-cooperation in the Chapter 11 proceedings. The Bankruptcy Court granted the Trustee's motion on October 7, 2010. Fiorello's pending motion to dismiss was subsequently denied on October 20, 2010, on the grounds that the proceedings had been converted to Chapter 7, under which a debtor has no right to voluntary dismissal.

Accordingly, the Chapter 7 proceeding marched forward. On October 25, 2010, the Bankruptcy Court allowed Fiorillo's most recent motion (of several) seeking to postpone filing his schedules and financial statements and stated that "no further extensions will be granted." A court order issued stating that disclosures were due on November 1, 2010, and giving notice of a second Section 341 meeting on November 2, 2010.

Having again failed to postpone filing his financial disclosures, Fiorillo filed an "Emergency Motion to Dismiss Chapter 7 Bankruptcy Case" on October 29, 2010. The motion came just three days after the Bankruptcy Judge allowed Fiorillo's motion to amend Exhibit D and four days before the schedules were due. In his motion, Fiorillo sought dismissal of his action on the ground that he was ineligible for relief under the Bankruptcy

Code because he had not taken the required credit-counseling course prior to filing for bankruptcy. Fiorillo also argued that the exigent circumstances that he (twice) certified as truthful under penalty of perjury were actually insufficient to constitute exigent circumstances under the statute and, therefore, he could not have been granted a temporary waiver of the § 109(h) requirement. Fiorillo maintained that his motion was an "emergency" motion because his schedules were due on November 1, 2010, and "[t]he Debtor should not have to provide schedules to the public and be questioned under oath in an adversarial setting when there is no jurisdictional basis for doing so."

The Bankruptcy Court promptly denied Fiorello's emergency motion. The endorsement read: "Denied. The debtor is estopped from claiming the lack of credit counseling based on his certification under the penalty of perjury that he completed the requisite credit counseling. The debtor is ordered to file a certificate of credit counseling within 14 days of the date of this order." Fiorello now appeals the Bankruptcy Court's denial of his emergency motion.

Following the initiation of the appellate proceedings in this court, the parties continued to dispute Fiorillo's credit-counseling compliance in the Bankruptcy Court.[1] Fiorillo

---

[1]Although "the district court is limited to the evidentiary record compiled in the Bankruptcy Court and may not conduct fact-finding of its own," *In re Fitzhugh*, No. 09-10397, 2009 WL

5

did not file a credit-counseling certificate within fourteen days as required by the Bankruptcy Court's October 28, 2010, order. Consequently, the Trustee filed a motion seeking to compel Fiorillo to file such a certification, and, over objection and following a second court order, Fiorello filed the certification on January 31, 2011. The certification states that Fiorello completed the required credit-counseling course on September 7, 2010, prior to filing his motion to amend Exhibit D and prior to filing both motions to dismiss the case.[2]

## B. Statutory Background

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. Law No. 109-8, 119 Stat. 23, ushered in the most extensive reform of the Bankruptcy Code in decades. In enacting BAPCPA, Congress aimed to limit "the recent escalation of consumer bankruptcy filings," H.R. Rep. No. 109-31, at 3, 2005 U.S.C.C.A.N. at 90. In particular, as the title of the bill indicates, "[t]he purpose of [BAPCPA] is to improve bankruptcy law and practice by restoring personal responsibility and

---

3764026, at *1 (D. Mass. Nov. 10, 2009) (citing *In re Colonial Mortg. Bankers Corp.*, 186 F.3d 46, 49 (1st Cir. 1999)), I include this additional — undisputed — factual information in order to complete the narrative regarding this issue.

[2]The Trustee asks that I take judicial notice of the certification. Because there is no dispute that the certification is authentic, I do so, noting that Fiorillo completed the course shortly after commencing his bankruptcy proceeding.

integrity to the bankruptcy system and ensure that the system is fair for both debtors and creditors." *Id.* at 1, 2005 U.S.C.C.A.N. at 89; *see also Wirum v. Warren (In re Warren)*, 568 F.3d 1113, 1118 (9th Cir. 2009) (citing legislative history and observing that the "core purpose [of BAPCPA] was to prevent abusive bankruptcy filings"); *Segarra-Miranda v. Acosta-Rivera (In re Acosta-Rivera)*, 557 F.3d 8, 13 (1st Cir. 2009).

To that end, BAPCPA imposed a number of new eligibility and disclosure obligations on would-be debtors, including § 109(h), which requires debtors to receive credit counseling before filing for bankruptcy. *See* BAPCPA §§ 106, 107. The additional eligibility obligations established by BAPCPA, and § 109(h) in particular, have led to a wave of litigation regarding the effect of BAPCPA on the Bankruptcy Court's discretion in bankruptcy proceedings. *See, e.g.*, *In re Amir*, 436 B.R. 1, 8 (B.A.P. 6th Cir. 2010) ("Both 11 U.S.C. § 109(h) and § 521(i) were added to the Bankruptcy Code by [BAPCPA]. Since their enactment, courts have strongly disagreed over the meaning of both sections." (citations omitted)).

Section 109(h) "requires debtors to receive credit counseling before they can be eligible for bankruptcy relief so that they will make an informed choice about bankruptcy, its

alternatives, and consequences."[3]  H.R. Rep. NO. 109-31, at 2

(2005), *reprinted in* 2005 U.S.C.C.A.N. at 89.  At the time

Fiorillo filed his petition in the Bankruptcy Court, 11

U.S.C. § 109(h)(1) stated:

> Subject to paragraphs (2) and (3), and notwithstanding
> any other provision of this section, *an individual may
> not be a debtor* under this title *unless such individual
> has, during the 180-day period preceding the date of
> filing of the petition by such individual, received
> from an approved nonprofit budget and credit counseling
> agency described in section 111(a) an individual or
> group briefing* (including a briefing conducted by
> telephone or on the Internet) that outlined the
> opportunities for available credit counseling and
> assisted such individual in performing a related budget
> analysis.

11 U.S.C. § 109(h)(1) (emphases added).[4]  Certification of

compliance with § 109(h)(1) must be filed with the Bankruptcy

---

[3]Despite Congress's laudable goals in enacting § 109(h),
courts have been critical of the mechanics of the
credit-counseling requirement.  *See, e.g.*, *In re Enloe*, 373 B.R.
123, 127 (Bankr. D. Colo. 2007) ("Although certainly not
controlling, it is instructive and gives context to this issue to
note the developing consensus, since the inception of BAPCPA,
that the credit counseling requirement is largely a procedural
hurdle without value or consequence.").

[4]In 2010, Congress amended 11 U.S.C. § 109(h)(1) in response
to a disagreement among courts regarding whether a petitioner
satisfies § 109(h)(1) by receiving credit counseling on the same
day as filing — rather than at least one day before filing.  In
the Bankruptcy Technical Corrections Act of 2010, Pub. Law No.
111-327, 124 Stat. 3557, 3557-58, Congress replaced "preceding"
with "ending on" and also inserted "other than paragraph (4) of
this subsection" after "this section."  Neither amendment affects
the disposition of this case, and I will refer throughout this
Memorandum to the version of § 109(h) in effect at the time
Fiorillo filed his Chapter 11 petition and the Bankruptcy Court
ruled on his motion to dismiss.

Court within fifteen days of filing a voluntary petition.  11 U.S.C. § 521(b)(1).

Unlike the new disclosure requirements added by BARA and listed in 11 U.S.C. § 521(a)(1), failure to comply with the filing requirements under 11 U.S.C. § 521(b)(1) does not lead to automatic dismissal.  *Compare* 11 U.S.C. § 521(i)(1) ("[I]f an individual debtor in a voluntary case under chapter 7 or 13 fails to file all of the information required under subsection (a)(1) within 45 days after the date of the filing of the petition, the case *shall be automatically dismissed* effective on the 46th day after the date of the filing of the petition [unless the deadline is extended by the court]." (emphasis added)), *with* 11 U.S.C. § 521(b)(1) ("In addition to the requirements under subsection (a), a debtor who is an individual shall file with the court . . . a certificate from the approved nonprofit budget and credit counseling agency that provided the debtor services under section 109(h) describing the services provided to the debtor.").

Section 109(h) provides three exceptions to the requirement established by § 109(h)(1).  The only arguably applicable exception available in this case,[5] exigent circumstances under

_____

[5]The two other exceptions are plainly inapplicable.  Section 109(h)(2)(A) exempts debtors who reside in a district in which there are no approved credit-counseling agencies, and § 109(h)(4) exempts any "debtor whom the court determines, after notice and hearing, is unable to complete those requirements because of incapacity, disability, or active military duty in a military combat zone."

§ 109(h)(3), was invoked by the Appellant himself on his Exhibit D form and in his motion to amend that form.  This narrow exception, in essence, provides a temporary waiver for up to forty-five days[6] to

> a debtor who submits to the court a certification that--
>
> (i) describes exigent circumstances that merit a waiver of the requirements of paragraph (1);
>
> (ii) states that the debtor requested credit counseling services from an approved nonprofit budget and credit counseling agency, but was unable to obtain the services referred to in paragraph (1) during the 7-day period beginning on the date on which the debtor made that request; *and*
>
> (iii) is satisfactory to the court.

11 U.S.C. § 109(h)(3)(A) (emphasis added).  Courts have interpreted this provision to obligate a debtor seeking such an exemption to make a showing of all three requirements in a certificate or motion to the court in order to obtain the temporary waiver.  *See, e.g.*, *In re Falcone*, 370 B.R. 462, 465 (Bankr. D. Mass. 2007) (dismissing a petition because the petitioner failed to certify that he sought credit counseling *before* filing his petition); *In re Duplessis*, No. 06-14747, 2007

---

[6]11 U.S.C. § 109(h)(3)(B) states:
With respect to a debtor, an exemption under subparagraph (A) shall cease to apply to that debtor on the date on which the debtor meets the requirements of paragraph (1), but in no case may the exemption apply to that debtor after the date that is 30 days after the debtor files a petition, except that the court, for cause, may order an additional 15 days.

WL 1189, at *3 (Bankr. D. Mass. Jan. 11, 2007) (finding petitioners ineligible to be debtors because they failed to provide evidence that either they received or sought "prepetition credit counseling").

## II. STANDARD OF REVIEW

Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that "[o]n an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings."

In conducting this appellate review, the District Court reviews the Bankruptcy Court's findings of fact for clear error. *Richmond v. N.H. Supreme Court Comm. on Prof'l Conduct*, 542 F.3d 913, 917 (1st Cir. 2008). A Bankruptcy Court's determination that a party is acting in bad faith is a question of fact subject to this deferential standard. *In re Marrama*, 430 F.3d 474, 482 (1st Cir. 2005), *aff'd,* 549 U.S. 365 (2007) ("As 'good faith' is a fact-intensive determination to be made on a case-by-case basis, we review the instant finding as to 'bad faith' for clear error only."). "The bankruptcy court findings [of fact] will be considered clearly erroneous if, after a review of the entire record, [the district court is] left with the definite and firm conviction that a mistake has been committed." *In re R & R Assocs. of Hampton*, 402 F.3d 257, 264 (1st Cir. 2005) (internal quotation marks and citation omitted).

By contrast, the Bankruptcy Court's conclusions of law, including statutory construction, are subject to *de novo* review. *Flynn v. Bankowski (In re Flynn)*, 402 B.R. 437, 442-43 (B.A.P. 1st Cir. 2009) (*per curiam*). Consequently, whether a provision of the Bankruptcy Code, such as § 109(h), "confers any discretion upon the bankruptcy court . . . presents a pure issue of law, engendering *de novo* review." *In re Marrama*, 430 F.3d at 477.

The Trustee maintains that abuse of discretion is the appropriate standard of review for a bankruptcy court's determination of a motion to dismiss. This is the applicable standard of review for a bankruptcy court's decision to grant or deny a motion to dismiss a Chapter 7 bankruptcy proceeding for cause, such as under 11 U.S.C. § 707(a).[7] *See In re Abijoe Realty Corp.*, 943 F.2d 121, 128 (1st Cir. 1991). However, the Bankruptcy Court here dismissed on the equitable grounds of judicial estoppel.[8] Nevertheless, while there is no First

---

[7]A Chapter 7 debtor does not retain a right to dismiss a Chapter 7 proceeding voluntarily, "but must instead show cause." *See Segarra-Miranda v. Acosta-Rivera (In re Acosta-Rivera)*, 557 F.3d 8, 13 n.7 (1st Cir. 2009).

[8]While I need not address whether 11 U.S.C. § 707(a) provides an alternative basis for affirming the Bankruptcy Court's decision in this case, a denial of dismissal under § 707(a) for lack of cause would likely be similarly appropriate here. *See In re Hess*, 347 B.R. 489, 498 (Bankr. D. Vt. 2006) (holding that a dismissal for ineligibility under § 109(h) is governed by § 707(a)). Generally speaking, dismissal under § 707(a) is inappropriate where the creditors would be prejudiced by removing the debtor from bankruptcy or where the motive for dismissal is in bad faith. *See In re Haque*, 256 B.R. 352, 354

Circuit precedent directly addressing the standard of review appropriate when the Bankruptcy Court denies a motion to dismiss based on estoppel, other circuits have identified abuse of discretion as the appropriate standard. *See, e.g.*, *In re Kane*, 628 F.3d 631, 636 (3d Cir. 2010); *Calhoun v. Wal-Mart*, 330 F. App'x 119, 120 (8th Cir. 2009) (*per curiam*); *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999); *see also In re Amir*, 436 B.R. at 9. This deference is appropriate "[b]ecause judicial estoppel is an equitable doctrine, and the decision whether to invoke it within the court's discretion." *In re Coastal Plains*, 179 F.3d at 205.

This standard for motions implicating judicial estoppel in bankruptcy court decisions is consistent with the First Circuit's case law holding that abuse of discretion is the appropriate standard for appellate review of a District Court's application of judicial estoppel, *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 31 (1st Cir. 2004), and of a Bankruptcy Court determination for which the Bankruptcy Code statutorily confers discretion, *In re Gonic Realty Trust*, 909 F.2d 624, 626 (1st Cir. 1990).

Accordingly, once it is determined as a matter of law that

_____

(Bankr. D. Mass. 2000) ("In deciding whether to exercise its discretion and grant a Chapter 7 debtor's motion to dismiss the debtor's case, the court's primary consideration is whether dismissal is in the best interest of the creditors and also if those interests will be protected outside bankruptcy.").

the equitable doctrine of estoppel is implicated, any application of that doctrine by the Bankruptcy Court is reversible by the reviewing District Court only if it constitutes an abuse of discretion. *See also Jackson v. Novak (In re Jackson)*, 593 F.3d 171, 176 (2d Cir. 2010) ("[D]ecisions based on equitable relief are subject to an abuse of discretion review."). Such an abuse of discretion "occurs if the Bankruptcy Judge does not apply the correct law, or rests his decision on a clearly erroneous finding of material fact." *In re Cabral*, 285 B.R. 563, 570 (B.A.P. 1st Cir. 2002) (citation omitted).

### III. DISCUSSION

Since the enactment of BAPCPA, there has been a continuing flood of cases addressing debtors' noncompliance with § 109(h). In channeling this flood, courts have addressed *inter alia*, (A) whether the section removes a bankruptcy case from a Bankruptcy Court's jurisdiction or requires automatic or mandatory dismissal; (B) whether § 109(h) is subject to discretionary waiver by the court; and (C) whether equitable estoppel may justify denying dismissal. While the overwhelming source of the flood of § 109(h) cases is found in disputes where the debtor is objecting to dismissal, a trickle arises from disputes where the debtor seeks to dismiss the case due to his own failure to comply with § 109(h).

While courts have divided on nearly every question posed by

trustees' and creditors' motions to dismiss, there is relative consensus among the few courts that have addressed debtors' motions, especially when the debtor's motive for seeking dismissal is other than pure. BAPCPA, and § 109(h) in particular, may have cabined the Bankruptcy Court's discretion in many ways, but courts have consistently held that the Bankruptcy Court retains its core equitable role of "taking any action or making any determination necessary or appropriate . . . to prevent an abuse of process." 11 U.S.C. § 105(a). For this reason, as I will explain more fully herein, I will affirm the bankruptcy court's denial of the motion to dismiss.

A. Jurisdiction and Automatic Dismissal

Fiorillo's argument is, superficially, logical: (A) in order to be a debtor under the Bankruptcy Code, a bankruptcy petitioner must comply with § 109(h); (B) if a petitioner is not a "debtor," he is not entitled to bankruptcy relief; (C) thus, such a petition must be dismissed; therefore, because (D) Fiorillo did not comply with § 109(h); (E) Fiorillo cannot be a debtor, and the Bankruptcy Court cannot grant him any relief under the Bankruptcy Code; consequently (F) his case must be dismissed. In his original "Emergency Motion," Fiorillo argued that his ineligibility removed his case from the Bankruptcy Court's jurisdiction and, consequently, dismissal of his case was required.

The Trustee, however, argues that § 109(h) is not jurisdictional, and Fiorillo recognizes in his appellate brief that the majority of courts have so decided. Fiorillo nevertheless maintains — in slightly different language — that dismissal is required here because the Bankruptcy Court has no jurisdiction to grant relief to an ineligible debtor. He argues that the Bankruptcy Court has no discretion to waive the statutory requirements of § 109(h), and, in any case cannot grant relief to an ineligible debtor such as himself.

## 1. Jurisdiction and § 109(h)

There was initially a division among courts regarding whether § 109(h) is jurisdictional, but there is now an emerging consensus that it is not. The early decisions finding § 109(h) jurisdictional "considered the bankruptcy case a nullity, or at least not a pending case for purposes of 11 U.S.C. §§ 362(c) and (4)." *See In re Crawford*, 420 B.R. 833, 838 (Bankr. D.N.M. 2009) (collecting cases).

However, I conclude that § 109(h) is nonjurisdictional. The Second Circuit and the Bankruptcy Appellate Panels of two other circuits have recently adopted this approach, and I am persuaded that their reasoning is sound. *See Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 169 (2d Cir. 2010); *In re Amir*, 436 B.R. at 21; *Mendez v. Salven (In re Mendez)*, 367 B.R. 109, 116–18 (B.A.P. 9th Cir. 2007); *see also In re Mattingly*, 2008 WL

2559378, at *1 (treating § 109(h) as nonjurisdictional); *In re Falcone*, 370 B.R. at 467 (adopting the reasoning of *In re Tomco*, 339 B.R. 145 (W.D. Pa. 2006), and concluding that § 109(h) is nonjurisdictional).

The *Zarnel* court first concluded that *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) (unanimous), controlled. In *Arbaugh*, the Supreme Court held that, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." 546 U.S. at 516. The Second Circuit concluded that because Congress had not explicitly labeled § 109(h) as jurisdictional, it must not be. *Zarnel*, 619 F.3d at 169. Additionally, the Second Circuit observed that, before the enactment of BAPCPA, circuit courts had consistently found other eligibility provisions of § 109 to be nonjurisdictional. *See id.* at 168 (collecting cases); *see also Amir*, 436 B.R. at 21. I adopt the sound reasoning of the Second Circuit in *Zarnel* and hold that § 109(h) is nonjurisdictional.

## 2. Mandatory Dismissal and § 109(h)

Having determined that the § 109(h) requirement is nonjurisdictional, I next face the question whether noncompliance with § 109(h) mandates dismissal of the case. The Bankruptcy Code "does not expressly state whether dismissal of the case, or some other remedy, is required or appropriate" when a debtor does

not comply with § 109(h). *In re Crawford*, 420 B.R. at 837. "The Code's silence regarding the consequence for failing to comply with the pre-petition credit counseling requirement contrasts with other sections in the Bankruptcy Code that expressly provide for permissive, automatic, or mandated dismissal of an individual debtor's bankruptcy case." *Id.* In the absence of explicit guidance, a separate division among courts that have held § 109(h) to be nonjurisdictional has emerged. *See In re Amir*, 436 B.R. at 20 (collecting cases); *see also Zarnel*, 619 F.3d at 165; *In re Crawford*, 420 B.R. at 837–38.

As courts falling on both sides of this division have acknowledged, "the majority of courts have held that mandatory dismissal is the appropriate remedy, even though it can yield a harsh result."[9] *In re Borges*, 440 B.R. 551, 556 (Bankr. D.N.M. 2010). "[T]hose Courts that have found that there is no discretion to waive, modify or defer the requirements of Section 109(h) have subscribed to the principle that a bankruptcy court's equitable powers cannot be used to excuse compliance with clear

---

[9]*See, e.g.*, *In re Hedquist*, 342 B.R. 295, 300 (B.A.P. 8th Cir. 2006) ("But because those requirements are mandatory, bankruptcy courts have no discretion but to dismiss the case when the debtor fails to file a certification in compliance with its provisions."); *Clippard v. Bass (In re Bass)*, 365 B.R. 131, 137 (W.D. Tenn. 2007); *In re Charette*, No. 10-14393, 2011 WL 149203 (Bankr. N.D. Okla. Jan. 18, 2011); *In re Halfpenny*, No. 10-16252, 2010 WL 4261223 (Bankr. E.D. Pa. Oct. 22, 2010); *In re Ruckdaschel*, 364 B.R. 724 (Bankr. D. Idaho 2007); *In re Mills*, 341 B.R. 106 (Bankr. D.D.C. 2006).

and unambiguous statutory requirements." *In re Mitrano*, 409 B.R. 812, 817 (E.D. Va. 2009) (collecting cases). However, even among courts adopting this mandatory-dismissal approach, several have left undecided the question whether the Bankruptcy Court retains some discretion in "extraordinary circumstances." *See, e.g.*, *In re Borges*, 440 B.R. at 556 n.6 (concluding that § 109(h) mandates dismissal for noncompliance, "[o]ther than, perhaps, finding manifest injustice in the particular circumstances of the case"); *In re Mitrano*, 409 B.R. at 818 n.4 ("This case does not require this Court to decide the broader question whether such equitable doctrines may be invoked in 'extraordinary cases' to excuse non-compliance with Section 109(h) under the doctrine of 'manifest injustice.'").

A developing approach has held that the Bankruptcy Court retains some discretion after BAPCPA to waive the credit-counseling requirement in limited circumstances or to find "substantial compliance" sufficient to satisfy § 109(h).[10] This approach generally relies on the reasoning of either *In re Manalad*, 360 B.R. 288 (Bankr. C.D. Cal. 2007), or *In re Hess*, 347

---

[10]*See, e.g.*, *In re Meza*, No. 2:06cv1307, 2007 WL 1821416, at *3 (E.D. Val. June 25, 2007) (finding that debtor "substantially compl[ied]" with § 109(h) and denying dismissal); *In re Mattingly*, 2008 WL 2559387, at *1; *In re Enloe*, 373 B.R. 123, 129; *In re Henderson*, 364 B.R. 906 (Bankr. N.D. Tex. 2007); *In re Nichols*, 362 B.R. 88, 96 (Bankr. S.D.N.Y. 2007); *In re Manalad*, 360 B.R. 288 (Bankr. C.D. Cal. 2007); *In re Hess*, 347 B.R. 489 (Bankr. D. Vt. 2006).

B.R. 489 (Bankr. D. Vt. 2006).  In *Manalad*, the court used a

three-part analysis to determine whether a deficiency had been

"cured,"[11] *see Manalad*, 360 B.R. at 308; while the *Hess* court

applied a "totality of the circumstances" test to determine

whether dismissal was appropriate,[12]  *Hess*, 347 B.R. 497–98.

Although I need not determine whether one or both of these

approaches is appropriate under § 109(h), it is worth noting that

both *Manalad* and *Hess* suggest that dismissal is not appropriate

in Fiorillo's case.  By providing a reasonable explanation for

failing to receive prepetition counseling and acquiring that

counseling within fifteen days of filing, Fiorillo complied with

the "minimum requirements of § 109(h)."  Dismissal would also be

inappropriate under *Hess*'s approach because it would unduly

---

[11]The *Manalad* inquiry takes a no-harm-no-foul approach and
asks whether the debtor (1) has a "reasonable explanation" for
not seeking proper prepetition counseling; (2) participated in
credit counseling "once [he] learns that it is necessary"; and
(3) "[a]t the budget and credit counseling session, it is
determined that the individual's debts could not have been paid
outside of bankruptcy."  360 B.R. at 308.

[12]The *Hess* court applied the "totality of the circumstances"
test imported from the "cause" analysis used when considering
motions to dismiss under 11 U.S.C. § 707(a).  347 B.R. at 497.
*Hess* listed six criteria that should be examined when considering
whether dismissal for noncompliance with § 109(h) is appropriate.
*Id.* at 498 (finding "essential" whether the debtor filed "in good
faith," "took all reasonable steps to comply with the statutory
requirements," failed to comply because of extraordinary and
uncontrollable circumstances, met the "minimum standards of
§ 109(h)," and "whether any party would be prejudiced by allowing
the case to proceed" and "whether there are any unique equitable
factors that tip the balance in one direction or another").

burden the creditors and would reward an abusive use of the Bankruptcy Code conveniently to avoid foreclosure while also avoiding the inconvenient elements of full bankruptcy proceedings.

Bankruptcy Court sessions in this district appear themselves divided on this issue. *In re Duplessis*, No. 06-14747, 2007 WL 1189, at *3 (Bankr. D. Mass. Jan. 11, 2007) (Feeney, Bankr. J.), adheres to the strict-dismissal approach — absent very extraordinary circumstances. By contrast, *In re Mattingly*, No. 08-10883, 2008 WL 2559387, at *1 (Bankr. D. Mass. June 23, 2008) (Hillman, Bankr. J.), adopts the discretionary approaches outlined in *Hess* and *Manalad*. An earlier decision by Judge Hillman did conclude that "dismissal is the proper remedy for failure to comply with 11 U.S.C. § 109(h)," but also stated that "[the court] need not decide whether [it] ha[s] such discretion [under *Manalad* and/or *Hess*] as dismissal is warranted whether the standard is strict application of the statue or an exercise of discretion." *In re Falcone*, 370 B.R. at 466–67. The only District Court session that has faced this issue expressly declined to resolve it, dismissing the case on other grounds. *See In re Fitzhugh*, No. 09-10397, 2009 WL 3764026 (D. Mass. Nov. 10, 2009) (Stearns, J.) (affirming dismissal on grounds of nonresponse to motion and, therefore, declining to

address the § 109(h) question).  The First Circuit has not yet
confronted the question.[13]

Although Fiorillo urges me to hold that strict adherence
with § 109(h) is required, I decline to do so here.  The
Bankruptcy Court denied Fiorillo's motion on the grounds that he
was estopped from altering his previous representations that he
had complied with § 109(h).  Because courts have consistently
held that § 109(h), as a nonjurisdictional requirement, is
subject to the equitable doctrine of estoppel, I need not resolve
the question whether the bankruptcy court has the discretion to
waive strict compliance with the mandates of § 109(h).[14]
Instead, I will affirm on the basis of estoppel.

B. Estoppel and § 109(h)

Judicial estoppel "is an equitable doctrine that protects
the integrity of the judicial process."  *New Hampshire v. Maine*,
532 U.S. 742, 749 (2001).  "When a party assumes a certain
position in a legal proceeding and convinces the Court to accept

---

[13]However, the First Circuit's decision in *Segarra-Miranda
v. Acosta-Rivera (In re Acosta-Rivera)*, 557 F.3d 8 (1st Cir.
2009), holding that another new BAPCPA obligation may be waived —
despite a statutory automatic dismissal provision — suggests that
the First Circuit would endorse a discretionary as opposed to a
mandatory approach to § 109(h).

[14]The fact, of which I have taken judicial notice, *see supra*
note 2 and accompanying text, that Fiorello completed the
credit-counseling course nevertheless suggests substantial
compliance justifying a waiver, if the authority to grant a
waiver were found within the Bankruptcy Court's discretion.

that position, that party may not thereafter assume a contrary position." *Id.* Thus, the purpose of judicial estoppel is, like that of § 105(a) of the Bankruptcy Code, largely "to prevent an abuse of process." 11 U.S.C. § 105(a).

Bankruptcy courts have often used estoppel to prevent prejudice to creditors when a debtor "actively participat[es] in the bankruptcy case, albeit only in ways she deem[s] beneficial to her." *In re Willis*, 345 B.R. 647, 653–54 (B.A.P. 8th Cir. 2006). BAPCPA explicitly aimed to "restor[e] personal responsibility *and integrity* to the bankruptcy system and ensure that the system is fair for both debtors *and creditors*." H.R. Rep. No. 31, at 2, *reprinted in* 2005 U.S.C.C.A.N. at 88 (emphases added). Thus, judicial estoppel seems particularly appropriate here.

While no court in the First Circuit has applied estoppel to § 109(h), I have found no opinion in which a court that has addressed the issue has held the doctrine inapplicable.[15] Even

_____

[15]For opinions finding judicial estoppel applicable to § 109(h), see *In re Amir*, 436 B.R. at 21–22; *In re Warren*, 378 B.R. 640 (N.D. Cal. 2007), *rev'd on other grounds*, 568 F.3d 1113 (9th Cir. 2009); *In re Winters*, No. 07-60786, 2008 WL 202774, at *5 & n.4 (Bankr. N.D. Ohio Jan. 22, 2008); *In re Timmerman*, 379 B.R. 838 (Bankr. N.D. Iowa 2007); *In re Lilliefors*, 379 B.R. 608 (Bankr. E.D. Va. 2007); *In re Withers*, No. 06-42098, 2007 WL 628078, at *3 (Bankr. N.D. Cal. Feb. 26, 2007); *In re Manalad*, 360 B.R. 288 (Bankr. C.D. Cal. 2007); *In re Hall*, 368 B.R. 595, 599 (Bankr. W.D. Tex. 2007); *In re Parker*, 351 B.R. 790 (Bankr. N.D. Ga. 2006); *see also In re Mendez*, 367 B.R. 109, 118 (B.A.P. 9th Cir. 2007) (finding that the debtor waived the argument of ineligibility because he pursued and acquired § 109(h)(3)

some courts that adopt a mandatory-dismissal approach to § 109(h) have acknowledged that estoppel provides an exception to otherwise strict adherence. *In re Bain*, No. 08-13395, 2008 WL 2570831, at *2 (Bankr. E.D. Va. June 23, 2008) ("Without attempting to enter into an extended discussion or analysis, this court agrees that although the eligibility requirements of § 109(h) may not be jurisdictional, they are also not freely waivable at the court's discretion, but only, if at all, to prevent an abuse of the bankruptcy system."); *see also In re Crawford*, 420 B.R. at 838-39 (recognizing that "there is . . . evidence to suggest that a debtor is purposely manipulating the bankruptcy system in order to avoid the trustee's administration of estate assets"); *In re Dillard*, No. 06-30128, 2006 WL 3658485, at *5 n.5 (Bankr. M.D. Ga. Dec. 11, 2006) ("There may be circumstances in which ineligibility under § 109(h) is waived — for example, if termination of the case would prejudice creditors — but this case does not present them.").

The courts that have applied estoppel to § 109(h) have largely relied on the reasoning of *In re Parker*, 351 B.R. 790 (Bankr. N.D. Ga. 2006). *See, e.g.*, *In re Withers*, No. 06-42098,

---

extension from the court and filed the motion to dismiss the day before exemption objection hearing regarding his house); *In re Fileccia*, No. 06-05111, 2007 WL 1695387, at *5 (Bankr. M.D. Tenn. June 6, 2007) (denying debtor's motion to dismiss based on estoppel for failure to comply with disclosures under 11 U.S.C. § 521(e) based on § 109(h) estoppel case law).

2007 WL 628078, at *3 (Bankr. N.D. Cal. Feb. 26, 2007).  The

debtor in *Parker* had checked the first box on his Exhibit D and

later filed a motion to extend the time to file his

certification.  351 B.R. at 798.  After the Trustee sought to

sell his "Fantasy Houseboat," he filed a motion to dismiss the

case based on his own noncompliance with § 109(h).  *Id.*  The

Bankruptcy Court found that the debtor was estopped from arguing

that he was ineligible under § 109(h) because "Debtor obtained

the benefits the automatic stay . . . [and] caused the Chapter 7

Trustee to take action to engage professionals, expend

administrative time to investigate . . . and to take actions to

liquidate property of the estate for the benefit of unsecured

creditors[, and t]he Court entered a number of Orders with the

consent of the Debtor based on the Debtor's implicit

representation that he was eligible for bankruptcy relief."  *Id.*

at 798–99; *see also In re Amir*, 436 B.R. at 21 ("Oftentimes

courts faced with these types of debtors find them to be

unsympathetic and disingenuous movants.  This is especially true

when the debtor does not move for dismissal under § 109(h) until

after a court has found significant assets that can be sold for

the benefit of the estate." (citations omitted)).  The *Parker*

court concluded that "[a]llowing the Debtor to change his

position would make a mockery of the bankruptcy process — the

precise situation that the application of judicial estoppel

guards against." *In re Parker*, 351 B.R. at 799; *see also In re Withers*, 2007 WL 628078, at *3 ("Any other result would impugn the integrity of the judicial process, permitting a dishonest debtor to manipulate the system."). I concur in the reasoning of *Parker* and, consequently, hold that the doctrine of estoppel is applicable to § 109(h) and should be used to prevent abuse of the bankruptcy process. To find otherwise would be inconsistent with Congress's purpose in passing BAPCPA.

Finding the doctrine of judicial estoppel applicable to § 109(h) is also consistent with the Supreme Court's recent decision in *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007), and the First Circuit's decision in *Segarra-Miranda v. Acosta-Rivera (In re Acosta-Rivera)*, 557 F.3d 8 (1st Cir. 2009).

In *Marrama*, the Supreme Court held that a debtor who "acts in bad faith prior to, or in the course of, filing" for bankruptcy forfeits his statutory right to convert a Chapter 7 proceeding to a Chapter 13 proceeding under 11 U.S.C. § 706(a). The Court emphasized that, in the Bankruptcy Code, "[a] statutory provision protecting a borrower from waiver is not a shield against forfeiture." *Id.* at 374. The Court stated:

> Nothing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor. On the contrary, *the broad authority granted to bankruptcy judges to take any action that is necessary or*

26

> appropriate "*to prevent an abuse of process*" *described*
> *in § 105(a) of the Code*, is surely adequate to
> authorize an immediate denial of a motion to convert
> filed under § 706 *in lieu* of a conversion order that
> merely postpones the allowance of equivalent relief and
> may provide a debtor with an opportunity to take action
> prejudicial to creditors.

*Id*. at 374–75 (emphases added). The Court in *Marrama* reaffirmed

the essential discretion granted to bankruptcy courts by § 105(a)

to take any action necessary to prevent abuse of the Bankruptcy

Code. Thus, while *Marrama* does not directly address § 109(h), it

suggests that bankruptcy courts retain their traditional

equitable powers to prevent abusive use of the Bankruptcy Code

even when statutory language suggests that some aspects of that

discretion have been curtailed. *See In re Amir*, 436 B.R. at 22

(concluding that *Marrama* permits bankruptcy courts to waive

§ 109(h) when a debtor attempts to use that provision to escape

bankruptcy).

Similarly, in *Acosta-Rivera*, the First Circuit held that the

bankruptcy courts have discretion to waive the requirement of

disclosures listed in 11 U.S.C. § 521(a) after forty-five days,

even though 11 U.S.C. § 521(i)(1) establishes automatic dismissal

of the case if such disclosures are not filed within the forty-

five day limit. 557 F.3d at 13. Sections 521(a)(1) and (i)(1),

like § 109(h), were added by BAPCPA as

> part of an abuse-prevention package. With Congress's
> core purpose in mind, we are reluctant to read into the
> statute by implication a new limit on judicial
> discretion that would encourage rather than discourage

27

> bankruptcy abuse. It is safe to say that Congress, in
> enacting BAPCPA, was not bent on placing additional
> weapons in the hands of abusive debtors.

*Id.* The First Circuit warned that holding otherwise would not

"honor the [abuse-prevention] policy behind the Act" "[b]ecause

. . . debtors with something to hide are liable to treat

dismissal as an escape hatch to be opened as needed." *Id.* at

12-13. This holding, in the face of a statutory automatic-

dismissal provision, suggests that judicial estoppel survived any

limitation on the Bankruptcy Court's discretion ushered in by

BAPCPA.

C. Fiorillo's Motion to Dismiss

Having found that the Bankruptcy Court had the authority to

deny Fiorillo's motion to dismiss on the ground of estoppel, I

must now determine whether the Bankruptcy Court abused its

discretion in applying that doctrine. "In deciding whether to

apply judicial estoppel, courts should consider whether a party's

later position is inconsistent with an earlier position and

whether such an inconsistent position would 'impose an unfair

detriment on the opposing party if not estopped.'" *In re*

*Lilliefors*, 379 B.R. 608, 611 (Bankr. E.D. Va. 2007) (quoting *New*

*Hampshire*, 532 U.S. at 751).

There is no dispute that Fiorillo filed for bankruptcy on

August 23, 2010, in order to avoid foreclosure. In his original

— and amended — Exhibit D, Fiorillo stated that he had

anticipated avoiding foreclosure by paying the creditor, but the deal had fallen through at the last moment.  By filing for bankruptcy, Fiorillo sought to take advantage of the Bankruptcy Code's automatic stay, 11 U.S.C. § 362(a), which is "one of the principal benefits that a debtor receives from filing a bankruptcy petition."  *In re Parker*, 351 B.R. at 799 n.7.

Fiorillo initially attempted to maintain his eligibility as a debtor by taking the credit counseling course on September 7, 2010, and seeking to amend his original petition to seek temporary exemption under § 109(h)(3).  However, despite benefitting from the stay, Fiorillo was reluctant to adhere to the less attractive obligations of a debtor.  He filed several motions for leave to postpone the date for filing disclosures, and he failed to attend the first scheduled Section 341 meeting with creditors.

It was not until after the Trustee successfully moved to convert his Chapter 13 proceeding to a Chapter 7 liquidation proceeding — and the Bankruptcy Court denied a motion to postpone filing deadlines yet again — that Fiorillo sought to excuse himself from the bankruptcy process.  In his "Emergency Motion," filed just four days before disclosures were due and nearly two months after he had actually received proper credit counseling, *see supra* note 2, Fiorillo stated that his motive for seeking "emergency" dismissal was to avoid the November 1, 2010,

disclosure deadline.  He continued, "The Debtor should not have

to provide schedules to the public and be questioned under oath

in an adversarial setting when there is no jurisdictional basis

for doing so."

Like the debtors in *Parker* and *Amir*, Fiorillo participated

in the bankruptcy proceedings only to the extent that he thought

it convenient for him.  *In re Amir*, 436 B.R. at 22 (denying

dismissal based on estoppel because the debtor had participated

in bankruptcy proceeding, including filing several motions, and

"[i]t was only after the bankruptcy court avoided IMC's lien on

the Gates Mills property and ruled that it was property of the

estate, that Amir began asserting he was ineligible for

bankruptcy relief"); *In re Parker*, 351 B.R. at 797 (finding

waiver appropriate because debtor sought to comply with

§ 109(h)(3), participated "actively" in his Chapter 7 case, and

sough dismissal "only when the Trustee was proceeding with the

sale of the Fantasy Houseboat").  Likewise, Fiorello represented

his reasons for noncompliance with § 109(h) as exigent in at

least two filings with the Bankruptcy Court before "doing an

about-face as to eligibility," *In re Parker*, 351 B.R. at 797,

and, in his "Emergency Motion" and this appeal, arguing that

those circumstances could not be considered exigent.[16]  His

---

[16]Whether an impending foreclosure sale can constitute
exigent circumstances under § 109(h)(3) is a context-specific
factual question better suited to the Bankruptcy Court's

failure to file his certification of compliance for more than three months — perhaps in order to retain noncompliance as an offensive weapon for eliminating his bankruptcy pleading when it suited him — until compelled by the court further suggests bad faith.

Fiorillo's initial representations that he complied with § 109(h) before filing (in his initial Exhibit D) and his purported desire to cure his noncompliance (in his motion to amend Exhibit D) caused the Bankruptcy Court, his creditors, and the Trustee to proceed with the bankruptcy proceedings in reliance upon his contention that he was an eligible debtor. Permitting Fiorillo to assert now that he is ineligible would prejudice the creditors. Accordingly, it was not an abuse of

---

resolution. Fiorillo is mistaken in asserting that case law dictates that an impending foreclosure sale cannot constitute exigent circumstances. While some courts have so held, *see, e.g.*, *In re Mason*, 412 B.R. 1 (Bankr. D.D.C. 2009); *In re DiPunto*, 336 B.R. 693 (Bankr. E.D. Pa. 2006), other courts have held that a foreclosure *sale* can be sufficient under § 109(h)(3), *see, e.g., In re Tam*, No. 10-40825, 2010 WL 3946520, at *1 (Bankr. N.D. Ind. Sept. 9, 2010); *In re Childs*, 335 B.R. 623 (Bankr. D. Md. 2005). *See also In re Prater*, 445 B.R. 424, 429 (Bankr. E.D. Pa. 2010) ("This Court notes that courts are split as to whether a debtor may rely upon an impending foreclosure sale to establish the existence of exigent circumstances."). Because Fiorillo had an "agreed upon arrangement" with his creditor that fell through "at the last minute," the Bankruptcy Court would not have abused its discretion in determining that Fiorillo satisfied at least this prong of § 109(h)(3). *See In re Duncan*, 418 B.R. 278, 280 (B.A.P. 8th Cir. 2009) ("Determining whether a debtor has made a sufficient demonstration of exigent circumstances meriting a temporary waiver or suspension of the credit counseling requirement is a matter committed to the court's discretion.").

discretion for the Bankruptcy Court to deny his motion on the grounds of estoppel.

## IV. CONCLUSION

For the reasons set forth more fully above, I AFFIRM the Bankruptcy Court's Order denying Fiorillo's motion to dismiss.


**/s/ Douglas P. Woodlock**
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE